UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
C.R. STONE CONCRETE
CONTRACTORS, INC.,                          Chapter 7
         DEBTOR.                           Case No. 05-11119-WCH

**MEMORANDUM OF DECISION AND
REPORT AND RECOMMENDATION REGARDING
MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

**I. INTRODUCTION**

The matters before the Court are the "Motion by Joseph G. Butler, Chapter 7 Trustee of CR Stone Concrete Contractors, Inc. for Approval of Settlement Agreement []" (the "Motion to Approve Settlement") filed by Joseph G. Butler (the "Trustee"), Chapter 7 trustee of the estate of C.R. Stone Concrete Contractors, Inc. (the "Debtor") and the "Motion by Joseph G. Butler, Chapter 7 Trustee of CR Stone Concrete Contractors, Inc. for Report and Recommendation to United States District Court for the District of Massachusetts Concerning Trustee' Motion to Approve Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019" (the "Motion for Report and Recommendation") filed by the Trustee. These matters involve several consolidated adversary proceedings (the "Omnibus Action") through which the Trustee asserts various causes of action against Charles G. Krattenmacher, Jr. ("Krattenmacher"), the executor of the estate of Richard Anderson ("Anderson"), Plumb House, Inc. ("Plumb House"), Dalton Builders, Inc. ("Dalton," collectively with Krattenmacher and Plumb House, the "Anderson Defendants"[1]), John Marini ("Marini"), John Marini Management Company ("Marini Management"), Lenox-

---

[1] Identification of these parties as the "Anderson Defendants" is meant for ease of reference and does not constitute a finding that these entities are the alter ego of Anderson.

1

Norwood LLC ("Lenox"), The Framing Company, Inc. ("Framing Co.," collectively with Marini, Marini Management, and Lenox, the "Marini Defendants"[2]), and Gillian Welby ("Welby," collectively with all other defendants, the "Defendants").  On November 20, 2013, at the request of the Defendants, the order of reference with respect to the Omnibus Action was withdrawn by Judge Woodlock of the United States District Court for the District of Massachusetts and the Omnibus Action was transferred to the District Court.  Through the Motion to Approve Settlement, the Trustee now seeks approval of a settlement of the Omnibus Action pursuant to Fed. R. Bankr. P. 9019.  The Motion for Report and Recommendation was filed at Judge Woodlock's direction, requesting that I address certain jurisdictional issues regarding the proposed settlement now that the District Court has withdrawn the reference of the Omnibus Action.  For the reasons set forth below, I will grant the Motion to Approve Settlement and recommend that the District Court approve the parties' stipulation of dismissal when filed.

## II. BACKGROUND

### A. Procedural History

The Omnibus Action was originally initiated by the Debtor while it operated as a debtor-in-possession approximately ten years ago, but since the conversion of the case to one under Chapter 7, it has been prosecuted by the Trustee.  As is not surprising in a case of this vintage, the procedural history and factual allegations underlying the Omnibus Action are lengthy and complex.  I have repeatedly summarized the allegations of the Trustee's complaint in prior

---

[2] Identification of these parties as the "Marini Defendants" is meant for ease of reference and does not constitute a finding that these entities are the alter ego of Marini.

2

decisions and a report and recommendation to the District Court and hereby incorporate them herein by reference.[3]

In the broadest of strokes possible, the Debtor was formerly a duly organized Massachusetts corporation that operated a business performing concrete contracting, design, and installation in all phases of construction.[4] Anderson was the principal and "primary decision maker" of Plumb House and Dalton.[5] Plumb House and Dalton are Massachusetts corporations engaged in the business of general contracting on projects in Norwood, Quincy, and Waltham, Massachusetts for which the Debtor was a subcontractor.[6] The Trustee alleges that Anderson and Welby, who had been an employee of the Debtor, with "substantial assistance" from Marini and his entities, allegedly "joined together to strip [the Debtor's] lucrative business away from it and transfer it to Anderson."[7]

Through his complaint, the Trustee sought relief against the Defendants by way of: turnover of the Debtor's business and property pursuant to 11 U.S.C. § 542 (Count I); damages for the post-petition use of, damage to, and failure to return the Debtor's property pursuant to 11 U.S.C. § 549 (Count II); recovery of the Debtor's property fraudulently transferred to the

---

[3] *See Butler v. Anderson (In re C.R. Stone Concrete Contractors, Inc.),* Report and Recommendation Regarding Motion to Withdraw the Reference, No. 05-1307, Docket No. 268 (Oct. 15, 2013); *(In re Butler v. Anderson (In re C.R. Stone Concrete Contractors, Inc.),* 462 B.R. 6 (Bankr. D. Mass. 2011) (granting in part and denying in part the Chapter 7 trustee's motion to substitute Krattenmacher as a party defendant in light of the passing of Anderson); *Butler v. Anderson (In re C.R. Stone Concrete Contractors, Inc.),* No. 05-1307, 2011 WL 3207204 (Bankr. D. Mass. July 26, 2011) (denying the Chapter 7 trustee's original motion to substitute without prejudice for failure to serve the motion in the manner required by Fed. R. Civ. P. 25(a)(3)); *Butler v. Anderson (In re C.R. Stone Concrete Contractors, Inc.),* 434 B.R. 208 (Bankr. D. Mass. 2010) (denying the Marini Defendants' motion to dismiss the present adversary proceeding); *C.R. Stone Concrete Contractors, Inc. v. Anderson (In re C.R. Stone Concrete Contractors, Inc.),* 346 B.R. 32 (Bankr. D. Mass. 2006) (denying the Chapter 7 trustee's motion to approve a proposed settlement with the defendants).

[4] Amended Complaint, Docket No. 146, ¶ 14.

[5] *Id.* at ¶ 2.

[6] *Id.* at ¶¶ 5-6.

[7] *Id.* at ¶ 30.

Defendants pursuant to 11 U.S.C. § 548 (Count III); damages for the conversion of the Debtor's property (Count IV); damages for civil conspiracy to destroy the Debtor and steal its business (Count V); damages for breach of contract relating to the subcontracts for the Norwood, Quincy, and Waltham Projects, as well as Welby's employment and non-compete agreements (Counts VI, VII, VIII, and XV); damages for breach of the covenant of good faith and fair dealing (Count IX); damages for interference with the Debtor's contractual relationships and/or advantageous business relations (Counts X, XVII, and XVIII); damages for unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A (Count XI); equitable subordination of the claims of the Defendants pursuant to 11 U.S.C. § 510 (Count XII); recovery of preferential transfers pursuant to 11 U.S.C. § 547 (Count XIII); damages for violations of the automatic stay (Count XIV); damages for breach of fiduciary duty (Count XVI); equitable estoppel (Count XIX); and creation of a constructive trust to sequester the ill-gotten gains of the Defendants (Count XX). The Defendants all filed answers to the Trustee's complaint and the Marini Defendants, Plumb House, and Dalton filed counterclaims, including: breach of contract; unjust enrichment arising from the Debtor's alleged submission of materially false requisitions; misrepresentation based upon the Debtor's alleged false statements that it had paid subcontractors; breach of implied warranty and/or negligence; slander of title; intentional interference with the Marini Defendants' contractual relations with its lender; and unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A. Each of the Defendants also demanded a jury trial.

After Anderson passed away, I approved the Trustee's request to substitute Krattenmacher in his place, but dismissed Counts XIX and XX, and Count XI, concluding that

claims for "unfair and deceptive practices" did not survive Anderson's death.[8] I also dismissed Count XII for equitable subordination as to Anderson for failure to state a plausible claim for relief.[9] In April 2013, the parties filed pre-trial statements indicating that they anticipated that a trial would take approximately 12 days, with 18 witnesses testifying and over 500 exhibits introduced into evidence.

On April 9, 2013, the Defendants filed a motion to withdraw the reference with respect to the Omnibus Action in light of their jury demand and lack of consent to a jury trial in the bankruptcy court. With the Trustee's consent, the motion was promptly transmitted to the District Court. After a hearing, Judge Woodlock took the matter under advisement and directed counsel to seek a finding and recommendation from me with respect to the Motion. On October 15, 2013, I entered a Report and Recommendation Regarding Motion to Withdraw the Reference, recommending that the District Court grant the motion. Judge Woodlock granted the motion to withdraw the reference by electronic order on November 20, 2013.

On January 30, 2014, the parties filed a Notice of Settlement in the District Court, representing that the Omnibus Action had been settled in principle subject to mutually agreeable documentation and bankruptcy court approval pursuant to Fed. R. Bankr. P. 9019. Judge Woodlock conducted a pretrial conference on February 5, 2014, at which time he questioned whether bankruptcy court approval was necessary or appropriate given that the reference had been withdrawn and many of the claims required adjudication by an Article III judge. Judge Woodlock directed the Trustee to request, in conjunction with seeking approval of the proposed

---

[8] *In re C.R. Stone Concrete Contractors, Inc.,* 462 B.R. at 28.

[9] *Id.*

settlement, a Report and Recommendation addressing his jurisdictional concerns and how this case should move forward.

On June 20, 2014, the Trustee filed the Motion to Approve Settlement and Motion for Report and Recommendation. To date, no objections have been filed.

### B. The Proposed Settlement

The proposed settlement contemplates that in exchange for mutual releases of any and all claims the Trustee and the Defendants have against each other, Plumb House shall make three structured payments to the Trustee totaling $687,500.00 (the "Settlement Amount") within approximately 80 days of obtaining my approval of the settlement. Upon payment of the Settlement Amount, Plumb House and Dalton Builders, who had jointly filed a proof of claim in this case, shall have an allowed nonpriority unsecured claim in the amount of $110,637.60 and Framing Co. shall have an allowed nonpriority unsecured claim in the amount of $327,520.00. No other Defendant shall have a claim in the Debtor's case.

In support, the Trustee notes the Omnibus Action would take three weeks to try before a jury and consists of a factually complex mix of bankruptcy claims, conspiracy claims, business tort claims, and contract claims with counterclaims by the Defendants for significant sums. Notwithstanding the parties' vigorous advocacy of their respective positions, the Trustee asserts that they agree that there is great uncertainty as to the ultimate outcome of the trial, exposing all parties to significant risk and substantial costs.

To further highlight the uncertainty of proceeding to trial, the parties have offered a summary of their experts' conclusions. For example, Alan Perkins, P.E. ("Perkins"), the Trustee's concrete construction expert, opines that the Debtor is owed money by the Defendants under each subcontract, and that the Defendants' alleged cost of completion was inflated and

6

lacked adequate documentation. In contrast, Marini Management's expert, Robert Kelliher ("Kelliher"), opines that the Debtor defaulted on the Norwood project on numerous occasions, resulting in the Debtor owing Marini Management $327,530.00. Similarly, Plumb House's expert, Ralph A. Palumbo ("Palumbo"), C.P.A., C.I.A., opines that Plumb House's completion costs on the Waltham and Quincy projects were properly documented and that the Debtor owes Plumb House $110,637.70 on account of its defaults.

Additionally, Howard Gordon ("Gordon"), the Trustee's valuation expert, opined that as of January 7, 2005, the date on which the Defendant's allegedly took over the Debtor's business, the value of the Debtor as a going concern was $2.22 million to $2.47 million. Gordon further opines that the value of the income stream received by Plumb House and Dalton Builders on account of taking over the Debtor's business is $3.78 million. On the other hand, Plumb House's expert, Stephen J, Bravo ("Bravo"), opines that Gordon's analysis is improper, inadequately documented, and inaccurate. Plumb House also retained a medical expert, Stephen M. Gerson, M.D., M.B.A. ("Dr. Gerson"), who opines that the actions of Christopher Stone ("Stone"), the former principal of the Debtor who has since passed away, were consistent with a diagnosis of substance abuse, rendering him unable to run the Debtor in a competent manner.

In sum, the Trustee asserts that the proposed settlement provides a substantial benefit to the Debtor's estate and, given attendant circumstances, is fair, reasonable, and in the best interests of the Debtor's estate.

7

### III. DISCUSSION

    A. Implications of the Withdrawal of the Reference on the Proposed Settlement

District courts have original and exclusive jurisdiction over cases arising under the Bankruptcy Code.[10] In the District of Massachusetts, the District Court has exercised its authority under 28 U.S.C. § 157(a) to refer all bankruptcy matters in the first instance to the bankruptcy court.[11] Nevertheless, pursuant to 28 U.S.C. § 157(d), the district court may "withdraw, in whole or in part, any case or proceeding referred under [§ 157(a)] . . . on timely motion of any party, for cause shown."[12] While "cause" is not defined in the statute, the well-established general rule is that withdrawal of the reference should be reserved for when it is "'essential to preserve a higher interest,'"[13] such as situations where "a party has a right to a jury trial as to a pending issue and refuses, as it may, to have the bankruptcy court conduct the jury trial."[14]

In the present case, the District Court withdrew the reference with respect to the Omnibus Action only, as that was the relief the Defendants requested, and the order did not indicate that the reference to the Debtor's underlying bankruptcy case was withdrawn. Therefore, the Debtor's bankruptcy case remains pending before me while the Omnibus Action was effectively removed to the District Court so that it could be treated like any other civil action filed there, notwithstanding the existence of claims exclusive to bankruptcy. This situation is analogous to

---

[10] 28 U.S.C. § 1334(a).

[11] *See* L.R., D. Mass. 201.

[12] 28 U.S.C. § 157(d).

[13] *Container Recycling Alliance v. Lassman*, 359 B.R. 358, 360 (D. Mass. 2007) (*quoting Gray v. Solvay Polymers, Inc. (In re Dooley Plastic Co., Inc.)*, 182 B.R. 73, 80–81 (D. Mass. 1994)).

[14] *Container Recycling Alliance v. Lassman*, 359 B.R. at 360.

8

the routine practice of litigating claims in the state court, whose authority to enter final orders is not questioned, during the pendency of the bankruptcy case.

A bankruptcy trustee's dual status as both the estate fiduciary and a litigant in a civil action subjects a proposed settlement on behalf of the estate to a second level of review. In order to protect the estate's creditors and permit an objective determination that a proposed settlement is in the best interests of the estate, "settlements must be approved by the Bankruptcy Court after a consideration of the circumstances of the settlement."[15] Because jurisdiction over the underlying bankruptcy case remained in the bankruptcy court, the Trustee appropriately sought approval to return here.[16] This presents no jurisdictional or Constitutional problems because the District Court's general order of reference stands as to the Debtor's bankruptcy case and I am not entering a final order on the merits of any claim requiring Article III adjudication by approving a proposed settlement.

Upon my approval of the proposed settlement, the reasons for which are explained below, the Trustee must take all necessary steps to bring Omnibus Action to a close in the District Court. To the extent that he represents that he will file a stipulation of dismissal in the District Court, I recommend, based on my approval of the proposed settlement, that the District Court approve that stipulation in the ordinary course.

---

[15] *Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1239 (1st Cir. 1997).

[16] That said, while the Trustee's request to return to the bankruptcy court was appropriate as the bankruptcy case remained pending before me, the District Court may *sua sponte* withdraw, in whole or in part, any case referred to the bankruptcy court. See 28 U.S.C. § 157(d). Therefore, Judge Woodlock was free to withdraw the reference with respect to the consideration of the Motion to Approve Settlement and review the adequacy of the proposed settlement on its own. Because Judge Woodlock did not do that, I will rule on the merit of the proposed settlement in the first instance pursuant to my retained jurisdiction.

B. Approval of the Settlement

Pursuant to Fed. R. Bankr. P. 9019(a), the bankruptcy court may, on a motion by the trustee and after notice to all creditors, approve a compromise or settlement.[17] The United States Court of Appeals for the First Circuit has instructed that when determining whether to approve a compromise, "[t]he bankruptcy court essentially is expected to 'assess [ ] and balance the value of the claim[s] . . . being compromised against the value . . . of the compromise proposal.'"[18] The First Circuit has further explained that the bankruptcy court should consider the following factors when making this determination:

> (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.[19]

I must keep in mind that "compromises are favored in bankruptcy,"[20] and that my task is "'to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness.'"[21] In making that determination, I must accord some deference to the Trustee's judgment and not substitute my own.[22]

---

[17] Fed. R. Bankr. P. 9019(a).

[18] *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 (1st Cir.1998) (*quoting Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995)). See *In re High Voltage Engineering Corp.*, 397 B.R. 579, 601-602 (Bankr. D. Mass. 2008); *In re Fibercore, Inc.*, 391 B.R. 647, 655 (Bankr. D. Mass. 2008).

[19] *Jeffrey v. Desmond*, 70 F.3d at 185 (*citing In re Anolik*, 107 B.R. 426, 429 (D. Mass. 1989)).

[20] *In re Healthco Int'l, Inc.*, 136 F.3d at 50 n. 5 (*quoting* 9 Collier on Bankruptcy ¶ 9019.01, at 9019-2 (15th ed. 1995)).

[21] *Id.* at 51 (*quoting Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks omitted)).

[22] *Id.* at 50 n. 5.

Applying these standards to the proposed settlement compels the conclusion that the Trustee properly exercised his business judgment in reaching a settlement which is fair and reasonable. Given the lengthy history of the Omnibus Action, I am confident that the Trustee has thoroughly evaluated the merits of his claims and the counterclaims asserted. At this stage, both the Trustee and the Defendants believe the outcome of a jury trial is substantially uncertain, which the record amply supports. The Trustee's complaint consists of twenty counts made up of a factually complex mix of bankruptcy claims, conspiracy claims, business tort claims, and contract claims. The parties agree that a trial on the merits would require three weeks, eighteen witnesses, and over five hundred exhibits. I further note that there is vast disagreement among the parties' expert witnesses' opinions, further complicating matters. In sum, the complexity of the case, the delay occasioned by litigating to judgment, and the uncertainty of the result all weigh in favor of approval of the proposed settlement.

Moreover, I find the proposed settlement provides a significant economic benefit as it will bring $687,500.00 into the estate. The proposed settlement will also reduce the claims against the Debtor's estate by releasing all Defendants' claims other than Plumb House's and Dalton Builders' general unsecured claim in the amount of $110,637.60 and Framing Co.'s general unsecured claim in the amount of $327,520.00. In contrast, a three week trial will increase the costs on both sides.

Finally, both the Debtor's bankruptcy case and the Omnibus Action have been pending for approximately ten years. It is long past time to bring this matter to a close and allow the estate's creditors to receive a distribution on their claims. With that in mind, the proposed settlement is certainly in their interests.

For all these reasons, I will approve the Motion to Approve Settlement.

## IV. **CONCLUSION**

In light of the foregoing, I will enter an order approving the Motion to Approve Settlement and recommend that the District Court allow the Omnibus Action to be brought to a close in the ordinary course.

                                                                                                               _____
                                                                                                               William C. Hillman
                                                                                                               United States Bankruptcy Judge

Dated: September 15, 2014

Counsel Appearing:

    Alan L. Braunstein, Mark W. Corner, Paul S. Samson, Riemer & Braunstein, LLP,
        Boston, MA, for Joseph G. Butler, the Chapter 7 trustee
    Vincent J. Pisegna, Jill Brenner Meixel, Krokidas & Bluestein, LLP, Newton, MA
        for Charles G. Krattenmacher, Jr., Plumb House, Inc., and Dalton Builders, Inc.
    Charles P. Kindregan, Looney & Grossman, Boston, MA
        for Gillian Welby
    James S. Singer, Ruldolph Friedmann LLP, Boston, MA
        for John S. Marini, John Marini Management Company, Lenox-Norwood, LLC,
        and The Framing Company, Inc.